IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 2:05-cr-240-GEB |
| Plaintiff, | ) | |
| | ) | ORDER |
| v. | ) | |
| UMER HAYAT, | ) | |
| Defendant. | ) | |

On December 12, 2005, the magistrate judge filed an Order finding that Defendant Umer Hayat ("Umer") has proffered sufficient properties and sureties to reasonably assure his appearance as required. The government appeals the magistrate judge's Order.

## BACKGROUND

Umer was indicted by a grand jury under the false statement provisions of 18 U.S.C. § 1001. At his initial appearance, Umer was ordered detained. Umer moved for reconsideration of his detention and his motion was heard by the magistrate judge on September 23, 2005. The magistrate judge ordered Umer released subject to certain conditions, but stayed the release order pending review by a district judge. The government filed a timely appeal.

1           On appeal, the district judge stated that "the government
2    . . . raised some doubt whether Umer has a sufficiently close
3    relationship with Sher and Safdar, two of the four sureties."
4    (Amended Order, Nov. 4, 2005, at 16.)  Although Sher told Pretrial
5    Services "he has a close relationship with Umer," Sher previously
6    told the FBI he posted his property because "Umer Hayat made
7    multiple, persistent calls from jail to convince him to put up the
8    property and . . . he did not want to do it, [but] he ultimately
9    acquiesced."  (Id. at 11.)  In addition, although Safdar told
10   Pretrial Services "he feels a strong blood relationship with Umer,"
11   during an interview with the FBI, Safdar said "while he and his
12   father are related to the Hayats, they are not particularly close
13   with them."  (Id.)  The district judge further stated that "the
14   government . . . raised some doubt whether [sureties] Safdar,
15   Khatab, and Hamid Hayat have sufficient connections to the
16   [proffered] properties."  (Id. at 17.)  The district judge observed
17   that Property 1, Property 3, and Property 4 are rental properties,
18   but also noted Safdar told Pretrial Services that Property 3 "is his
19   only asset."  (Id.)  Despite these doubts, the recommendation of
20   Pretrial Services was followed and Umer was ordered released subject
21   to certain conditions, including a $1,500,000 appearance bond.  (Id.
22   at 19-20.)  The appearance bond was to be secured by the five real
23   properties proffered by the four sureties Safdar, Sher, Khatab, and
24   co-Defendant Hamaid Hayat.  (Id. at 18-19.)
25           Subsequently, Umer moved to modify the conditions of his
26   release, requesting that bail be reduced from $1,500,000 to
27   $1,200,000 because Property 2 was no longer available to secure an
28   appearance bond.  The government opposed the motion for the

                                    2

reduction in bail and also challenged the sufficiency of the proposed sureties and the pledged properties to reasonably assure Umer's appearance at future court proceedings.

Bail was reduced as Umer requested, but the proposed sureties and proffered properties were found insufficient based on the record before the court. (Amended Order, Nov. 18, 2005, at 9.) The briefs on the motion, which included declarations, brought to light additional inconsistent statements by sureties Sher and Safdar. (Id. at 12.) Specifically, "Sher originally told Pretrial Services that he was the owner of Property 2, that it had an estimated value of $300,000, and that it was unencumbered, when in fact Safdar is the record owner of Property 2, there is an encumbrance of $125,000, and the property is unavailable for use to secure an Appearance Bond." (Id. at 10.) In addition, "Safdar represented to Pretrial Services that Property 3 was his 'only asset,' when in fact Safdar owns both Property 3 and Property 2." (Id. at 10-11.) "The inconsistent statements by Safdar and Sher about Property 2 [were found to] raise serious credibility concerns." (Id. at 12.) The decision reasoned that "[i]n light of these concerns, Safdar's and Sher's earlier conclusory statements indicating they have a close relationship with Umer lack[ed] sufficient support in the record." (Id.)

In addition, the decision indicated that without Property 2, a significant disincentive for flight had been removed. (Id. at 14.) "Property 1, Property 3, and Property 4 appear[ed] to be disposable rental properties, which . . . somewhat undermine[d] their effectiveness as security." (Id.) In addition, "the loss of Property 1 and Property 3 would not leave Sher and Safdar without

3

their primary residence." (<u>Id.</u>) Furthermore, it appeared "Umer Khatab would not be hurt by the loss of . . . [Property 4 and Property 5]" because he was "planning on building a house and living in Pakistan." (<u>Id.</u>) Consequently, based on the record before the court, the proposed sureties and proffered property were found inadequate. (<u>Id.</u>)

Subsequently, Umer proffered the same properties, Property 1, Property 3, Property 4, and Property 5, as security for the appearance bond. The government filed objections to the proposed properties and sureties, and Umer requested an evidentiary hearing on the adequacy of the proposed properties and sureties. The magistrate judge conducted evidentiary hearings and later found that Umer proffered sufficient properties and sureties to reasonably assure his appearance as required.

## DISCUSSION

A district judge applies a de novo standard of review to an order issued by a magistrate judge. <u>United States v. Koenig</u>, 912 F.2d 1190, 1193 (9th Cir. 1990). Under this standard, a district judge "should review the evidence . . . and make [his or her] own independent determination whether the magistrate's findings are correct. . . ." <u>Id.</u> Therefore, "the ultimate determination of the propriety of detention is . . . decided without deference to the magistrate's ultimate conclusion." <u>Id.</u>

If a de novo review indicates that "it [is] necessary or desirable for the district judge to hold additional evidentiary hearings, it may do so . . . ." <u>Id.</u> Furthermore, a district judge must conduct a de novo evidentiary hearing if the judge decides to reject the factual findings of a magistrate judge issued after the

1 | magistrate judge held evidentiary hearings because "our judicial
2 | system has traditionally accorded great respect for findings of fact
3 | made by the judge who hears and sees the witness." <u>United States v.</u>
4 | <u>Ridgeway</u>, 300 F.3d 1153, 1155 (9th Cir. 2002).  "The law has long
5 | recognized the value of [first-hand observations of witnesses and
6 | evidence] and gives them a measure of protection from easy
7 | modifications made on the basis of dry records."  <u>United States v.</u>
8 | <u>Bergera</u>, 512 F.2d 391, 393 (9th Cir. 1975).

9 | The magistrate judge made multiple credibility
10 | determinations following the evidentiary hearings, which are
11 | reflected in the Magistrate's Order.  For example, the magistrate
12 | judge concluded Sher Afzal's explanations for his prior inconsistent
13 | statements were "credible" and "consistent with the fact that Sher
14 | Afzal is elderly, in poor health and his family is responsible for
15 | his everyday care."  (Order, December 12, 2005, at 27.)  The
16 | magistrate judge also found "that the inconsistencies in Safdar
17 | Afzal's statements . . . are either minor, immaterial or have been
18 | adequately explained."  (<u>Id.</u> at 28.)  Furthermore, the magistrate
19 | judge stated that although he "does not understand Umer Khatab's
20 | explanation as to why he sold a rental property in Stockton several
21 | years ago and used the proceeds to build a house on land in Pakistan
22 | . . . there is some indication that this explanation may have the
23 | ring of truth."  (<u>Id.</u> at 30.)
24 | ////
25 | ////
26 | ////
27 | ////
28 | ////

1   Since the district judge is required to make an independent determination whether these factual findings are correct, and several credibility questions are at issue, the district judge will hold an evidentiary hearing commencing on December 23, 2005, at 9:00 a.m. in Courtroom 10.[1]

IT IS SO ORDERED.

Dated: December 21, 2005

/s/ Garland E. Burrell, Jr.
GARLAND E. BURRELL, JR.
United States District Judge

---

[1] Counsel have been contacted about this evidentiary hearing and have indicated they will endeavor to prepare for it.