1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

    UNITED STATES OF AMERICA,           )     2:05-CR-0240-GEB
10                                       )
                        Plaintiff,       )
11                                       )     ORDER REGARDING APPLICATION
            v.                           )     BY INTERVENORS FOR ACCESS
12                                       )     TO RECORDED EXHIBITS
    HAMID HAYAT and UMER HAYAT,          )
13                                       )
                        Defendants.      )
14  ─────────────────────────────────── )

15          On March 20, 2006, the Court heard argument on the

16  application filed by Non-party and Intervenor KTVU, Inc. ("KTVU") for

17  access to videotaped exhibits introduced in the trial of Hamid Hayat

18  and Umer Hayat ("Defendants").  KTVU was joined in the motion by Non-

19  parties NBC Subsidiary (KNBC-TV), Inc., KNTV Television, Inc., KNSD-

20  TV, a division of Station Venture Operations, LP, and KXTV, Inc.

21  ("Media Non-Parties").  Grace K. Won of Farella Braun + Martel LLP

22  appeared on behalf of KTVU and the Media Non-Parties.  Johnny Griffin

23  III appeared on behalf of Defendant Umer Hayat and Wazhma Mojaddidi

24  appeared on behalf of Defendant Hamid Hayat.  S. Robert Tice-Raskin,

25  David Deitch, and Laura Ferris appeared on behalf of the government.

26          During oral argument, the Court noted it has a duty to

27  "take[] into account . . . the privacy rights of individuals"

28  referenced in the videotaped interviews when determining whether to

                                     1

grant access to the exhibits.  Times Mirror Co. v. United States, 873
F.2d 1210, 1216 (9th Cir. 1989); In re Application of Newsday, Inc.,
895 F.2d 74, 79-80 (2nd Cir. 1990).  The Court observed it had a duty
to consider "whose privacy interests might be infringed" because "all
the parties who may be harmed by disclosure are typically not before
the court."  Newsday, 895 F.2d at 79.  In addition, the Court observed
it had a duty to consider the "nature and degree of injury" to
non-parties should access be granted.  United States v. Amodeo, 71
F.3d 1044, 1051 (2nd Cir. 1995).

          The Court noted each Defendant identified during the
interviews certain individuals, religious leaders, and/or a religious
place of worship, by name and other personal identifiers, as a person
or entity involved with terrorist training camps or with violent jihad
against the United States.  The Court observed the allegations
"suppl[ied] only the barest details . . . for believing that [the
individuals and the religious entity] may be engaging in criminal
activity," but that if the interviews were broadcast, they may
"indicate to the public that [the individuals and the religious
entity] have engaged in criminal activity."  The Times Mirror Co., 873
F.2d at 1216.  The Court observed that because the individuals and the
religious entity are not parties to this or any other known
proceeding, they "have no forum in which to exonerate themselves" of
the inflammatory accusations.  Id.  The Court reasoned that "the risk
of serious injury to innocent [non]-parties [was] a grave one . . .
[because the] injur[y] to the reputations of the [non-parties] [was]
likely to be irreparable."  Id.  In light of the nature and degree of
the injury, the Court concluded the non-parties' privacy interests

1 "weigh[ed] heavily in the court's balancing equation."  <u>Newsday</u>, 895

2 F.2d at 79.

3          The Court also cited a case from the Third Circuit which

4 recognized the differences between inflammatory allegations appearing

5 in the printed media and being broadcast over the television:

6          It is far worse . . . when that [information] is broadcast
         over a television station for all to see and hear.  The
7          differences between the various news media cannot be
         overlooked . . . there is an increased likelihood that [the
8          information] will be repeated in a television broadcast, and
         have a greater impact, than in the printed media.
9

10 <u>United States v. Criden</u>, 681 F.2d 919, 923 (3rd Cir. 1982) (in

11 dissent).  The Court concluded that to allow broadcast of the

12 inflammatory accusations on television "would be fanning the flames of

13 media interest and inviting pervasive publicity."  <u>United States v.</u>

14 <u>Mouzin</u>, 559 F. Supp. 463, 467 (C.D. Cal. 1983).  The Court declined to

15 allow "rebroadcast of evidence which may inflict unnecessary and

16 intensified pain on [non-]parties who . . . are entitled to such

17 protection."  <u>Criden</u>, 681 F.2d at 921 (3rd Cir. 1982).  Therefore, the

18 Court concluded that the privacy interests of the individuals and the

19 religious entity weighed in favor of a redaction of certain personal

20 identifiers.  The Court granted access to the interviews, pursuant to

21 the following terms:

22          (1)  On or before March 22, 2006, the government will

23 provide KTVU with a copy of the Hamid Hayat and Umer Hayat videotapes

24 of the interviews that were introduced as exhibits (the "Exhibits") at

25 the respective trials of Defendants;

26          (2)  KTVU will prepare a redacted copy of the Hamid Hayat

27 and Umer Hayat videotaped interviews.  KTVU will redact from the audio

28 of those videotapes the citations noted in Exhibits A and B that are

appended to docket entry 248.  Exhibit A consists of (a) a copy of the
Hamid Hayat transcript that includes both the redactions noted by KTVU
in its moving papers and the redactions set forth by the Court at the
hearing on March 20, 2006, and (b) the page and line redactions noted
in tabular form.[1]  Exhibit B consists of (a) a copy of the Umer Hayat
transcript that includes both the redactions noted by KTVU in its
moving papers and the redactions set forth by the Court at the hearing
on March 20, 2006, and (b) the page and line redactions noted in
tabular form;

(3)  After preparing the audio redactions, KTVU will provide
the Court with a compilation of the audio redactions in a CD or DVD
format for the Court's review;

(4)  Following review and approval by the Court, KTVU will
provide 2 (two) copies of the redacted videotapes in a CD or DVD
format to the Court's media liaison officer, Carol Davis.  These
copies will be made available to the media for copying with charges
for such copying to be borne by the individual media entities;

(5)  KTVU will not broadcast, disseminate, make available or
in any other manner publish any portions, in whole or part, of the
unredacted material in the Exhibits; and

(6)  Upon completing the redactions, KTVU will return the
unredacted Exhibits to the government and will affirm under penalty of
perjury that all copies of any unredacted material in the Exhibits, in
any form, whether DVD, CD or on any computer hard drive or storage
device has been destroyed.  KTVU will affirm its compliance with this

[1] **The page and line redactions noted in tabular form of
Hamid Hayat's interview, which has been delineated as Exhibit A-1,
shall be modified to include the Court ordered redaction at 23:8.**

1  stipulation by submitting to the Court a declaration from an

2  individual with authority to make this affirmation for the company.

3          IT IS SO ORDERED.

4  Dated:  March 21, 2006

5

6                              /s/ Garland E. Burrell, Jr.
                               GARLAND E. BURRELL, JR.
7                              United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28