```
1
2
3
4
5
6
7
8                  IN THE UNITED STATES DISTRICT COURT
9                FOR THE EASTERN DISTRICT OF CALIFORNIA
10 UNITED STATES OF AMERICA,       )    2:05-CR-0240-GEB
                                   )
11                 Plaintiff,      )
                                   )    AMENDED ORDER REGARDING
12                                 )    APPLICATION BY INTERVENORS
            v.                     )    FOR ACCESS TO RECORDED
13                                 )    EXHIBITS
   HAMID HAYAT and UMER HAYAT,     )
14                                 )
                   Defendants.     )
15 _____)
```

16          On March 21, 2006, the government filed a motion to amend

17 the Order filed March 21, 2006, ("March 21 Order"), which granted

18 Intervenors access to the videotaped interviews of Defendants with

19 agents of the Federal Bureau of Investigation ("FBI").  The government

20 requests the March 21 Order be amended to require Intervenor KTVU to

21 visually blur the images of the FBI agents who participated in the

22 interviews in order to allow the FBI agents to serve in an effective

23 undercover capacity in the future.[1]  See United States v. Trofimoff,

---

[1] KTVU previously stated it had no objection to the visual blurring, and apparently assumed the government would release the videotapes with the blurring process already completed.  The government represents that it cannot expeditiously complete the blurring process, but that KTVU has no objection to performing the blurring process with its own equipment. The government also represents counsel for Defendant Umer Hayat told the government his

(continued...)

1

2001 WL 1644230, *3 (M.D. Fla. June 12, 2001) (recognizing the governmental interest in taking measures necessary to ensure that FBI agents' identities are not needlessly made public). Therefore, this Order amends and supercedes the March 21 Order.

On March 20, 2006, the Court heard argument on the application filed by Non-party and Intervenor KTVU, Inc. ("KTVU") for access to videotaped exhibits introduced in the trial of Hamid Hayat and Umer Hayat ("Defendants"). KTVU was joined in the motion by Non-parties NBC Subsidiary (KNBC-TV), Inc., KNTV Television, Inc., KNSD-TV, a division of Station Venture Operations, LP, and KXTV, Inc. ("Media Non-Parties"). Grace K. Won of Farella Braun + Martel LLP appeared on behalf of KTVU and the Media Non-Parties. Johnny Griffin III appeared on behalf of Defendant Umer Hayat and Wazhma Mojaddidi appeared on behalf of Defendant Hamid Hayat. S. Robert Tice-Raskin, David Deitch, and Laura Ferris appeared on behalf of the government.

During oral argument, the Court noted it has a duty to "take[] into account . . . the privacy rights of individuals" referenced in the videotaped interviews when determining whether to grant access to the exhibits. Times Mirror Co. v. United States, 873 F.2d 1210, 1216 (9th Cir. 1989); In re Application of Newsday, Inc., 895 F.2d 74, 79-80 (2nd Cir. 1990). The Court observed it had a duty to consider "whose privacy interests might be infringed" because "all the parties who may be harmed by disclosure are typically not before the court." Newsday, 895 F.2d at 79. In addition, the Court observed it had a duty to consider the "nature and degree of injury" to

---

[1](...continued)
client has no objection to the blurring of the FBI agents, and defense counsel for Hamid Hayat told the Court her client has no objection as well.

non-parties should access be granted.  <u>United States v. Amodeo</u>, 71 F.3d 1044, 1051 (2nd Cir. 1995).

The Court noted each Defendant identified during the interviews certain individuals, religious leaders, and/or a religious place of worship, by name and other personal identifiers, as a person or entity involved with terrorist training camps or with violent jihad against the United States.  The Court observed the allegations "suppl[ied] only the barest details . . . for believing that [the individuals and the religious entity] may be engaging in criminal activity," but that if the interviews were broadcast, they may "indicate to the public that [the individuals and the religious entity] have engaged in criminal activity."  <u>The Times Mirror Co.</u>, 873 F.2d at 1216.  The Court observed that because the individuals and the religious entity are not parties to this or any other known proceeding, they "have no forum in which to exonerate themselves" of the inflammatory accusations.  <u>Id.</u>  The Court reasoned that "the risk of serious injury to innocent [non]-parties [was] a grave one . . . [because the] injur[y] to the reputations of the [non-parties] [was] likely to be irreparable."  <u>Id.</u>  In light of the nature and degree of the injury, the Court concluded the non-parties' privacy interests "weigh[ed] heavily in the court's balancing equation."  <u>Newsday</u>, 895 F.2d at 79.

The Court also cited a case from the Third Circuit which recognized the differences between inflammatory allegations appearing in the printed media and being broadcast over the television:

> It is far worse . . . when that [information] is broadcast over a television station for all to see and hear.  The differences between the various news media cannot be overlooked . . . there is an increased likelihood that [the information] will be repeated in a television broadcast, and have a greater impact, than in the printed media.

3

United States v. Criden, 681 F.2d 919, 923 (3rd Cir. 1982) (in dissent).  The Court concluded that to allow broadcast of the inflammatory accusations on television "would be fanning the flames of media interest and inviting pervasive publicity."  United States v. Mouzin, 559 F. Supp. 463, 467 (C.D. Cal. 1983).  The Court declined to allow "rebroadcast of evidence which may inflict unnecessary and intensified pain on [non-]parties who . . . are entitled to such protection."  Criden, 681 F.2d at 921 (3rd Cir. 1982).  Therefore, the Court concluded that the privacy interests of the individuals and the religious entity weighed in favor of a redaction of certain personal identifiers.  The Court granted access to the interviews, pursuant to the following terms:

    (1)  On or before March 22, 2006, the government will provide KTVU with a copy of the Hamid Hayat and Umer Hayat videotapes of the interviews that were introduced as exhibits (the "Exhibits") at the respective trials of Defendants;

    (2)  KTVU will prepare a redacted copy of the Hamid Hayat and Umer Hayat videotaped interviews in which the images of the FBI agents are visually blurred.  KTVU will redact from the audio of those videotapes the citations noted in Exhibits A and B that are appended to docket entry 248.  Exhibit A consists of (a) a copy of the Hamid Hayat transcript that includes both the redactions noted by KTVU in its moving papers and the redactions set forth by the Court at the hearing on March 20, 2006, and (b) the page and line redactions noted in tabular form.[2]  Exhibit B consists of (a) a copy of the Umer Hayat

---

[2] **The page and line redactions noted in tabular form of Hamid Hayat's interview, which has been delineated as Exhibit A-1, shall be modified to include the Court ordered redaction at 23:8.**

4

1 | transcript that includes both the redactions noted by KTVU in its
2 | moving papers and the redactions set forth by the Court at the hearing
3 | on March 20, 2006, and (b) the page and line redactions noted in
4 | tabular form;
5 |    (3)  After preparing the audio and visual redactions, KTVU
6 | will provide the Court with a compilation of the audio and visual
7 | redactions in a CD or DVD format for the Court's review; KTVU will
8 | also provide the government with a compilation of the visual
9 | redactions for the government's review;
10 |    (4)  Following review and approval by the Court, KTVU will
11 | provide 2 (two) copies of the redacted videotapes in a CD or DVD
12 | format to the Court's media liaison officer, Carol Davis.  These
13 | copies will be made available to the media for copying with charges
14 | for such copying to be borne by the individual media entities;
15 |    (5)  KTVU will not broadcast, disseminate, make available or
16 | in any other manner publish any portions, in whole or part, of the
17 | unredacted material in the Exhibits; and
18 |    (6)  Upon completing the redactions, KTVU will return the
19 | unredacted Exhibits to the government and will affirm under penalty of
20 | perjury that all copies of any unredacted material in the Exhibits, in
21 | any form, whether DVD, CD, or on any computer hard drive or storage
22 | device, has been destroyed.  KTVU will affirm its compliance with this
23 | Order by submitting to the Court a declaration from an individual with
24 | authority to make this affirmation for the company.  In addition, KTVU
25 | shall submit to the Court a declaration in which it confirms it has
26 | /////
27 | /////
28 | /////

1  spoken with the government about the visual blurring, and has received
2  the government's approval that the blurring is sufficient.
3          IT IS SO ORDERED.
4  Dated:  March 22, 2006

                                /s/ Garland E. Burrell, Jr.
                                GARLAND E. BURRELL, JR.
                                United States District Judge