| | |
|---|---|
| UNITED STATES DISTRICT COURT | |
| EASTERN DISTRICT OF CALIFORNIA | |

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Respondent/Plaintiff,<br><br>  v.<br><br>HAMID HAYAT,<br><br>    Petitioner/Defendant. | No. 2:05-cr-240-GEB<br><br>**ORDER GRANTING THE GOVERNMENT'S MOTION FOR RECONSIDERATION** |

The United States of America (the "Government") seeks reconsideration of discovery rulings in the Magistrate Judge's orders filed on August 14, 2017, ECF No. 630 (the "August Order"), and on October 10, 2017, ECF No. 649 (the "October Order"). Gov't Motion for Reconsideration ("Mot. for Recons."), ECF No. 665. The Magistrate Judge's rulings authorize Petitioner Hamid Hayat ("Petitioner" or "Hayat") to conduct discovery in this habeas proceeding under 28 U.S.C. § 2255, in which he seeks to vacate his federal convictions and sentence. The October Order granted the Government's reconsideration request of certain discovery rulings in the August Order but affirmed the rulings with additional reasoning. The propounded discovery at issue is comprised of one interrogatory and two document production requests.

The Government argues in its reconsideration motion, inter alia, that "[t]he Magistrate Judge . . . misappli[ed] the legal standard governing Hayat's [discovery] motion[, and i]n misapplying the relevant legal standard and relying on an insufficient showing by Hayat to find good cause to support his

1

discovery request, the Magistrate Judge's rulings are contrary to law." Mot. for Recons. 15:11-12, 15:22-16:1.

Petitioner opposes the motion arguing that the Magistrate Judge's "finding of good cause for the limited [authorized] discovery . . . is consistent with the law concerning habeas discovery [and is authorized since Petitioner] has set forth numerous specific allegations in connection with [his habeas] claims that 'provide the Court with reason to believe that if the facts are fully developed, [he] may be able to demonstrate that he is entitled to relief.'" Pet.'s Opp'n to Mot. for Recons. ("Opp'n") 14:24-15:1, ECF No. 670 (quoting Bracy v. Gramley, 520 U.S. 899, 908-909 (1997)).

## I. PROCEDURAL BACKGROUND

The procedural history concerning the August and October Orders follows. Petitioner filed a motion to propound five interrogatories concerning his Sixth Amendment ineffective assistance of counsel claims and his Brady due process claims. ECF No. 619. The Government opposed the motion. ECF No. 625. The Magistrate Judge authorized three discovery requests in the August Order. The Government asked the Magistrate Judge to reconsider that order and provided notice to the Petitioner of the Government's ex parte, in camera, sealed submission to the Magistrate Judge of classified information in support of its reconsideration motion. ECF Nos. 633, 634. Petitioner opposed the motion. ECF No. 635.

The Magistrate Judge affirmed the August Order in the October Order "based on the new evidence presented" ex parte during the in camera proceeding, which consisted of "sealed . . .

classified information . . . that [was] not known to the court at the time of the [August O]rder." Oct. 10, 2017, Order 2:3-8. The Magistrate Judge explained in the October Order:

> While the court focused on the materiality of [the propounded discovery] to petitioner's [Strickland] ineffective assistance of counsel claim in [the August Order], further understanding of the [Classified Information Procedures Act ("CIPA")[1]] process for review, in particular the ex parte § 4 process, leads the court to conclude that the better rationale for the discovery rests on petitioner's Brady claim.

Id. at 16:7-10. The Magistrate Judge "affirm[ed] its finding of good cause for . . . discovery" that was "not provided to [the District Judge] previously." Id. at 16:4-5. The Magistrate Judge concluded in the October Order:

> [T]he government [shall] respond to the discovery requests with the understanding that the government need not provide any materials which [the District Judge] previously determined the government need not disclose. However, any materials responsive to the discovery requests which were not considered by [the District Judge] must be provided. In addition, the foundational documents for the four Balakot photographs which were the subject of the government's motion for a § 6 hearing in January 2006, are covered by the discovery requests.

Oct. 10, 2017, Order 20:20-26.

The Government sought and obtained a stay of the

---

[1] Section 4 of CIPA provides in pertinent part: "The court, upon a sufficient showing, may authorize the United States to delete specified items of classified information from documents to be made available to the defendant through discovery under the Federal Rules of Criminal Procedure, to substitute a summary of the information for such classified documents, or to substitute a statement admitting relevant facts that the classified information would tend to prove." 18 U.S.C. App. 3 § 4.

3

October Order from the District Judge. Mot. for Stay, ECF No. 661; Nov. 1, 2017, Order, ECF No. 668. The Government also filed the Motion for Reconsideration sub judice.

The Government raises several issues in its reconsideration motion. However, the Government's argument that the Magistrate Judge's good cause findings are unauthorized under the habeas discovery good cause standard is the only issue that will be reached herein, except for the ruling regarding the Government assisting Petitioner's counsel in procuring a security clearance, which the record reveals is now moot.

## II. LEGAL STANDARDS

The District Judge may revisit and set aside a Magistrate Judge's non-dispositive order[2] in whole or in part "where it has been shown that the magistrate judge's order is . . . contrary to law." 28 U.S.C. § 636(b)(1)(A); see also Fed. R. Civ. P. 72(a); EDCA Local Rule 303(f). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." DeFazio v. Wallis, 459 F.Supp.2d 159, 163 (E.D.N.Y. 2006) (citation and internal quotation marks omitted). The "contrary to law" standard applies to a Magistrate Judge's legal findings and allows for an independent, plenary review. FDIC v. Fidelity & Deposit Co. of MD, 196 F.R.D. 375, 378 (S.D. Cal. 2000); Haines v. Liggett Group, Inc., 975 F.2d 81, 91 (3d Cir. 1992).

"A habeas petitioner, unlike the usual civil litigant

---

[2] Federal Rule of Civil Procedure 72(a) "defines non-dispositive matters as those 'pretrial matters not dispositive of a claim or defense of a party.'" Maisonville v. F2 Am., Inc., 902 F.2d 746, 747 (9th Cir. 1990) (quoting Fed. R. Civ. P. 72(a)).

4

in federal court, is not entitled to discovery as a matter of ordinary course." Bracy, 520 U.S. at 904. However, the court "may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practice and principles of law." Fed. R. Governing § 2255 Proceedings 6(a). Good cause exists "where specific allegations before the court show reason to believe that the petitioner may, if the facts are developed, be able to demonstrate that he is . . . entitled to relief." Bracy, 520 U.S. at 908-09 (alteration in original) (citing Harris v. Nelson, 394 U.S. 286, 300 (1969)). However, "courts should not allow [habeas petitioners] to use . . . discovery for fishing expeditions to investigate mere speculation." Calderon v. U.S. Dist. Ct. for the N. Dist. of Cal. (Nicolaus), 98 F.3d 1102, 1106 (9th Cir. 1996). "To obtain discovery . . . a defendant must make a prima facie showing of materiality. Neither a general description of the information sought nor conclusory allegations of materiality suffice; a defendant must present facts which would tend to show that the Government is in possession of information helpful to the defense." United States v. Mandel, 914 F.2d 1215, 1219 (9th Cir. 1990) (citations omitted). A habeas petitioner's "[g]eneralized statements about the possible existence of discovery material are insufficient to constitute 'good cause.'" Gonzalez v. Bennett, No. 00 Civ. 8401(VM), 2001 WL 1537553, at *4 (S.D.N.Y. Nov. 30, 2001). "Habeas corpus is not a general form of relief for those who seek to explore their case in search of its existence." Aubut v. Maine, 431 F.2d 688, 689 (1st Cir. 1970) (cited with approval in Nicolaus, 98 F.3d at

5

1106).

### III. ANALYSIS

#### A. The Magistrate Judge's Good Cause Finding for Interrogatory One

Interrogatory One asks the Government to "[i]dentify all steps taken by the team investigating and prosecuting the Hayat criminal case to determine whether Balakot was functioning as a jihadi training camp in 2003 and 2004, including but not limited to, efforts to physically travel to, and inspect, the Balakot site." Aug. 14, 2017, Order 14:1-3.

The Magistrate Judge found good cause for Interrogatory One, reasoning that it could aid Petitioner in proving his Sixth Amendment ineffective assistance of counsel claims. Aug. 14, 2017, Order. The Magistrate Judge stated in the August Order: "In order to prove the prejudice prong of the ineffective assistance of counsel claim, petitioner is entitled to inquire about the steps taken by the government to inspect the Balakot site to determine whether it was a functional training camp at the time that petitioner was in Pakistan." Id. at 5:21-23 (footnote omitted). The Magistrate Judge also ruled in the October Order that a Brady rationale best applied to a subset of the materials not previously brought to the district court's attention under Section 4 of the CIPA. Oct. 10, 2017, Order 15:8-16:2.

The Government argues in its reconsideration motion sub judice that Petitioner's trial counsel "did not need a security clearance to effectively investigate the Balakot camp" and that Petitioner's trial counsel confirmed the camp's existence and

sent an investigator to the area even though counsel had no security clearance. Mot. for Recons. 30:18-24. The Government further argues that Petitioner's Brady rationale underlying the sought after discovery "presumes the existence of material evidence about the Balakot camp that [trial counsel] failed to obtain." Id. at 31:15-16.

Petitioner opposes the Government's request to set aside Interrogatory One, and argues the value of that interrogatory to both his Strickland and Brady claims by highlighting trial counsel's cross-examination of Eric Benn, a government expert and senior imagery analyst from the Department of Defense. During cross-examination, Petitioner's trial counsel asked Benn "whether 'anyone from the United States [had] visited [the] location [depicted in the satellite images discussed by Benn].'" Opp'n 17:7-8 (quoting Mar. 28, 2006, Tr. 3105:10-11) (alterations in original). The Government objected on a relevancy ground and on the ground that an answer might disclose classified information. Mar. 28, 2006, Tr. 3105:13-14. The objection was sustained. Id. at 3105:15.

Petitioner argues that this cross-examination highlights trial counsel's "remarkable sacrifice of her client's constitutional right to confrontation, [caused by her previous] agree[ment] to abandon any line of cross-examination objected to on CIPA grounds." Opp'n 17:3-5. Petitioner further argues "the question of whether United States government agents had visited the Balakot camp site in the course of the investigation was highly relevant" and that "[t]he answer would be exculpatory whether it was in the affirmative or the negative." Opp'n 17:12-

7

14.

> If government agents had traveled to the Balakot location to investigate the camp's purported existence, what they discovered was not incriminatory – this is clear from Agent Aguilar's testimony. Agent Aguilar conceded that, absent Mr. Hayat's purported confession, he could not confirm that Mr. Hayat attended a jihadi camp. (RT 762:9-12). On the other hand, if government agents failed to so investigate, . . . that failure constituted exculpatory evidence. Kyles v. Whitley, 514 U.S. 445, 446 (1995) (evidence of sloppy or inadequate investigation supporting an attack on the good faith of the defendant's prosecution subject to Brady disclosure obligation).

Opp'n 25:1-8.

Petitioner's argument incorrectly assumes that the Government will always present all of the inculpatory material it possesses in pursuit of a conviction. See Mot. for Recons. 27:4-8 ("[T]he government [might] not use all available inculpatory evidence in a case where disclosure of that information might . . . harm[] national security . . . ."). In addition, Brady does not impose on the Government an affirmative obligation to inform a defendant of everything the Government did not do in an investigation, and Kyles — a case involving a multitude of specifically identifiable materials the Government had and withheld, see 514 U.S. at 428-29 — does not stand for that proposition.

"Ordinarily, we presume that public officials have properly discharged their official duties." Bracy, 520 U.S. at 909 (internal quotation marks omitted) (quoting United States v. Chem. Found., Inc., 272 U.S. 1, 14-15, (1926)). Petitioner has not shown that the requested discovery information in

8

Interrogatory One is supported by "any facts which would tend to show that the government was in possession of information that would be material to the defense." United States v. Little, 753 F.2d 1420, 1445 (9th Cir. 1984). The supposition that discovery of classified information could have aided in the referenced cross-examination is not supported by "any existing favorable evidence." United States v. Lucas, 841 F.3d 796, 802 (9th Cir. 2016). "[Habeas discovery] was never meant to be a fishing expedition for habeas petitioners to explore their [defense theory] in search of its existence." Rich v. Calderon, 187 F.3d 1064, 1067 (9th Cir. 1999) (citation and internal quotation marks omitted).

Petitioner "must do more than speculate that Brady material exists" and therefore his "proffer is insufficient to compel the government to provide the information he seeks [in his discovery request]." Lucas, 841 F.3d at 809. Since Petitioner's arguments are insufficient under the good cause standard to compel the Government to provide the discovery information he seeks, the Magistrate Judge's ruling on Interrogatory One is contrary to law.

### B. The Magistrate Judge's Good Cause Finding for Request for Document Production One

Request for Production One asks the Government to "[i]dentify and produce every image, by whatever device obtained or whatever means produced, and in the possession of the team investigating and prosecuting petitioner and his father Umer Hayat, depicting the Balakot training camp during the period between October 1, 2003 and December 1, 2004." Aug. 14, 2017,

Order 14:5-8.

The Magistrate Judge found that Petitioner demonstrated good cause to support this discovery request, stating:

> In [Petitioner's] 2015 Freedom of Information Act (FOIA) request, petitioner's counsel obtained documents from the National Geospatial-Intelligence Agency (NGIA), which included aerial photographs of more than twenty Pakistani militant camps. (ECF No. 608-2.) Petitioner's counsel represents that these photographs are so accurate and precise that Defense Department analysts were able to detect the presence of tents, vehicles, and armed militants engaged in training activities. (ECF No. 619-1 at 15.) The four photographs of the Balakot training camp presented . . . at trial did not include this level of detail.
>
> Petitioner's ineffective assistance of counsel claims assert that trial counsel was ineffective in not seeking a security clearance, as well as not procuring an expert on the Balakot training camp. These claims could be bolstered by the production of additional images of the Balakot camp, which, the government acknowledges do exist. Thus, this request is neither speculative, nor is it immaterial to the petition. In order to prove the prejudice prong of the ineffective assistance of counsel claim, petitioner is entitled to inquire about additional imagery of the Balakot training camp, which was available at the time of trial.
>
> Furthermore, petitioner's Brady claims assert that the government withheld critical information at trial. It is not speculative to conclude that the government has additional images of the Balakot camp that were not produced at trial, as the government admitted as much in its briefing. Additionally, the NGIA documents indicate that there are much more detailed images of Pakistani training camps available from the relevant time period. None of this material was produced to the defense team at trial. In order to support the Brady claims, petitioner is entitled to inquire about government aerial surveillance of the Balakot site, which were not produced at trial.

Aug. 14, 2017, Order 6:19–7:15.

The existence of other images of Balakot[3] is an inescapable inference from the trial record and NGIA FOIA Documents. See, e.g., Mot. for Recons. Ex. 1 at 000031, ECF No. 665-1 (discussing "imaging angles" of the Balakot camp during the time that Hayat purportedly attended a militant camp, a period that the four photographs introduced at trial did not cover).

However, Petitioner offers only speculation in support of his argument that the referenced images are exculpatory. Petitioner argues:

> Had such detailed evidence of the contemporaneous militant activities in areas near Balakot been disclosed to Mr. Hayat's trial counsel, as it clearly should have been, counsel could have convincingly argued that, contrary to the government's theory of the case, there was no armed jihadi training going on at the Balakot site in 2003 and 2004. If there had been, the government — which, as the [NGIA] FOIA [D]ocuments show, was closely monitoring militant activity in that area — would have surely have [sic] produced photographic evidence of that fact to the jury.

Opp'n 19:18–23. The Government disagrees, arguing:

> If, as in [Petitioner]'s case, the government can convict a defendant with only a portion of the inculpatory evidence against that defendant, it is entitled to do so. That the government exercised that option and did not use all available inculpatory evidence in a

---

[3] The NGIA FOIA Documents refer to the Balakot camp by the name "Kalas," see, e.g., Mot. for Recons. Ex. 1 at 000023 ("Kalas (Balakot) Camp") and at 000031 ("Kalas Militant Training Camp"). The parties do not dispute that "the Balakot camp is known in the intelligence community as the Kalas Camp." Mot. for Recons. 18:4 n.17 (citing Pet.'s Mem. in Support of Mot. for an Order Authorizing Interrogatories 11:22, ECF No. 619-1).

11

> case where disclosure of that information might have harmed national security is neither surprising, nor probative of whether or not there is undisclosed exculpatory material.

Mot. for Recons. 27:4-8.

Petitioner's conclusory assertion that the Government would have used all inculpatory evidence at trial and therefore any images not used at trial are exculpatory is unsupported. Petitioner has not "point[ed] to any existing favorable evidence to support his speculation." Lucas, 841 F.3d at 802. "Brady does not permit a [Petitioner] to sift through information held by the government to determine materiality . . . ." Id. at 807. "To obtain [habeas] discovery . . . , [Petitioner] must make the requisite showing of materiality. And to challenge the government's representation that it does not have Brady evidence, [Petitioner] must do more than speculate that Brady material exists." Id. at 809; cf. Fed. R. Crim. P. 16, 1975 Enactment Note B ("[A] defendant has no constitutional right to discover any of the prosecution's evidence . . . unless it is exculpatory within the meaning of Brady . . . ."). Since Petitioner's arguments are insufficient to compel the Government to provide the information he seeks, the Magistrate Judge's ruling is contrary to law.

### C. The Magistrate Judge's Good Cause Finding for Request for Document Production Two

Request for Production Two asks the Government to "[i]dentify and produce each document in the possession of the team investigating and prosecuting petitioner and his father Umer Hayat that refers to or discusses whether Balakot was functioning

12

as a jihadi training camp in 2003 and 2004." Aug. 14, 2017, Order 14:10-12.

Petitioner argued before the Magistrate Judge that the Government was in possession of information about Balakot's operational status that it did not turn over to the defense, and that Petitioner's NGIA FOIA Documents support this claim through reference to "a disagreement between government experts regarding the camp the Government claims Hayat attended." Pet.'s Mem. in Support of Mot. Order Authorizing Interrogatories 11:24—25 (citation omitted). The NGIA FOIA Documents contain a Government memorandum that references "a CIA analyst" who "championed" a camp other than Balakot as "being the camp in question." Mot. for Recons. Ex. 1 at 000070. That same memorandum suggests as a next step to "remov[e] the reference to Balakot on the title of the commercial imagery of [that other] camp." Id. at 000071.

The Magistrate Judge found:

> The NGIA [FOIA D]ocuments present evidence that there was some doubt among intelligence analysts that the camp described by petitioner in his statements to investigators was actually the Balakot training camp, and not another camp. (ECF No. 608-2 at 52.) This expression of doubt was never revealed to the defense during discovery . . . . It is clear from the NGIA documentation that the government had additional materials at its disposal concerning militant training camps that was not disclosed to the defense.

Aug. 14, 2017, Order 7:25-28, 8:2-3.

However, as the Government argues, "[Petitioner]'s claim that there are material, exculpatory . . . documents concerning whether the Balakot camp was a _functioning_ militant camp in 2003-2004 is based on pure speculation." Mot. for

13

Recons. 28:21—22 (emphasis added). "Neither the NGA FOIA Documents nor Benn's testimony establish the existence of undisclosed exculpatory evidence concerning whether the Balakot camp was a <u>functioning</u> militant camp in 2003-2004." <u>Id.</u> at 29:9—11 (emphasis added). Petitioner concludes that documents must exist that discuss Balakot's <u>operational</u> status because a Central Intelligence Agency analyst believed that another camp was more likely the site at which Petitioner trained; however, Petitioner's conclusion requires drawing unsupported inferences. The analyst could have thought Balakot was not the camp in question for any number of reasons having nothing to do with Balakot's operational status. The reference in the memorandum to the other analyst's position takes place amid a geographical discussion about militant training camps. <u>See</u> Mot. for Recons. Ex. 1 at 000070. Therefore, good cause has not been shown justifying the discovery request.

### III. CONCLUSION

For the foregoing reasons, the Government's motion for reconsideration of the Magistrate Judge's August Order and October Order is granted and those orders concerning the subject propounded discovery are reversed.

Further the Order filed November 1, 2017, ECF No. 668, granting the Government's motion for stay, ECF No. 661, pending a ruling on this motion for reconsideration is now vacated.

Dated: January 9, 2018

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge